Argued and submitted February 24, 2016, reversed and remanded January 5, petition for review denied June 1, 2017 (361 Or 524)

In the Matter of the Compensation of
Ashley A. Rehfeld, Claimant.

Ashley A. REHFELD,
*Petitioner,*

*v.*

SEDGWICK CLAIMS
MANAGEMENT SERVICES,
*Respondent.*

Workers' Compensation Board
1304380; A157406

388 P3d 403

Julene M. Quinn argued the cause and filed the briefs for petitioner. With her on the brief was Matthew A. C. U'Ren.

Michael G. Bostwick argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

## ARMSTRONG, P. J.

Claimant was injured while working for Wend Magazine in part as an unpaid intern and in part on commission. Because Wend was a noncomplying employer, the Workers' Compensation Board reasoned that it could not determine a weekly wage for claimant, and it therefore awarded her the statutory minimum temporary disability benefit of $50 per week. *See* ORS 656.210 (specifications for temporary total disability benefits). The board rejected claimant's contention that claimant's benefits should be calculated based on Oregon's legal minimum wage. Although we agree with the board that Oregon's minimum wage does not provide the wage on which to base claimant's benefits in this case, we nonetheless conclude that the board erred in awarding weekly benefits of only $50, and we therefore reverse and remand for reconsideration.

We summarize the relevant facts, which are largely undisputed, as reflected in the record and as found by the administrative law judge and adopted by the board. In July 2008, claimant began working part time as an unpaid intern for Wend Magazine, a magazine for sports enthusiasts.[1] Claimant's work at Wend involved graphic design, selling advertising, and modeling sports clothing for photo shoots. Wend and claimant agreed that she would be paid a commission on the sale of advertising but that she would not be paid for her other work. After working approximately one month at Wend, claimant was injured on the job when she fell and broke her wrist while modeling skateboard clothing for a photo shoot. Claimant's wrist injury required surgery.

Claimant filed a workers' compensation claim. A dispute arose about the amount of compensation to which claimant was entitled for temporary disability.[2] At the time of her injury, claimant had not finalized any advertising

---

[1] As noted, Wend Magazine was a noncomplying employer; thus, the Director of the Department of Consumer and Business Services referred the processing of the claim to Sedgwick CMS, as the assigned claims agent. *See* ORS 656.054.

[2] Sedgwick also disputed claimant's employment status and the compensability of the claim. In *Sedgwick v. Rehfeld*, 255 Or App 512, 298 P3d 68 (2013), we affirmed without opinion the board's order determining that claimant was a subject worker and that the claim was compensable.

sales and thus had not earned a commission. The board found that, although claimant had not received any compensation for her work at Wend at the time of her injury, she had an expectation of receiving compensation for advertising sales.[3]

Workers' compensation benefits for temporary disability are based on the worker's weekly wage. *See* ORS 656.210; OAR 436-060-0025(5)(a). Because of Wend's noncomplying status, the board reasoned that it was unable to determine a weekly wage for claimant. In the absence of a weekly wage, the board determined that claimant was entitled to the statutory minimum benefit for temporary disability of $50 per week. *See* ORS 656.210(1). In rejecting claimant's contention that the wage rate on which to base claimant's benefits was the statutory minimum wage set forth in ORS chapter 653, the board explained in an order on reconsideration that its authority to determine claimant's benefits depended on the requirements of ORS chapter 656 and the administrative rules of the Workers' Compensation Division of the Department of Consumer and Business Services, and that the board had no authority to consider the requirements for payment of the minimum wage.

Claimant challenges that determination on judicial review, contending that, in the absence of an agreement between claimant and Wend as to claimant's wages, she was entitled to be paid the statutory minimum wage set forth in ORS chapter 653, and her benefits should be determined accordingly. Sedgwick responds that the board was correct in concluding that, as distinct from any entitlement that claimant might have under ORS chapter 653 to receive a minimum wage for the work that she performed for Wend, claimant's benefits for temporary disability are to be determined as provided in ORS chapter 656 and OAR 436-060-0025. Claimant's petition presents a question of statutory construction that we review for legal error. *Baker v. Liberty Northwest Ins. Corp.*, 257 Or App 205, 210, 305 P3d 139, *rev den*, 354 Or 597 (2013).

---

[3] Claimant also received the skateboard clothing that she had modeled for the photo shoot, valued at $300, but there is no contention that the clothing constituted compensation.

An injured worker is entitled to benefits for temporary disability under ORS 656.210, which provides, as relevant:

"(1)   When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66- 2/3 percent of wages, but not more than 133 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is less. ***

"(2)(a)   For the purpose of this section, the weekly wage of workers shall be ascertained:

"(A)   For workers employed in one job at the time of injury, by multiplying the daily wage the worker was receiving by the number of days per week that the worker was regularly employed[.]"[4]

A worker's "wage" is "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." ORS 656.005(29).[5]

The department has promulgated OAR 436-060-0025(5), which describes methods for computing benefits for workers who, like claimant, are "employed with unscheduled, irregular or no earnings." OAR 436-060-0025(5) provides, as relevant:

"The rate of compensation for workers regularly employed, but paid on other than a daily or weekly basis, or employed with unscheduled, irregular or no earnings shall be computed on the wages determined by this rule.

"*****

"(i)   Covered workers with no wage earnings such as volunteers, jail inmates, etc., must have their benefits computed on the same assumed wage as that upon which the employer's premium is based.

---

[4] The record shows that claimant also worked part time as a server at a restaurant. We note that, under ORS 656.210(2)(a)(B), the weekly wage of a worker employed in more than one job at the time of injury is to be determined by adding all earnings that the worker was receiving from all subject employment, if the employer receives timely notice and verification of the second employment as required by ORS 656.210(2)(b).

[5] The "average weekly wage" is the Oregon average weekly wage in covered employment for the last quarter of the calendar year preceding the fiscal year in which the injury occurred. ORS 656.005(1).

"(j) For workers paid by commission only or commission plus wages insurers must use the worker's average commission earnings for previous 52 weeks, if available. For workers without 52 weeks of earnings, insurers must use the assumed wage on which premium is based. Any regular wage in addition to commission must be included in the wage from which compensation is computed."

For workers, like claimant, who have no wages, or who are paid on a commission and have less than 52 weeks of earnings, benefits must be calculated on "the assumed wage" on which the employer's premium is based. OAR 436-060-0025(5)(i), (j). But the rule does not explicitly apply to claimant's circumstance because, as a noncomplying employer, Wend did not have an "assumed wage" at the time of claimant's injury. In the absence of an assumed wage, the board reasoned that it could not calculate claimant's wage rate and that claimant's weekly wage therefore was zero.

ORS 653.025 specifies the minimum wage that Oregon employers must pay workers who are subject to that law. Claimant contends that, in the absence of an assumed wage on which to base claimant's benefits, the minimum wage to which she was legally entitled under ORS 653.025 must apply. Claimant bases her contention on *United Airlines v. Anderson*, 207 Or App 493, 498, 142 P3d 508 (2006), in which we held that a collective bargaining agreement executed after the claimant's injury that included a retroactive wage increase was binding as of the date of the claimant's injury and was therefore the "contract of hiring in force at the time of the accident." Claimant contends that, analogously, in the absence of wages, the statutory minimum wage became the "contract of hiring in force at the time of the accident," and that is the wage on which her benefits must be based. Claimant disputes the board's rationale that it lacked the authority to apply the minimum wage, contending that, ancillary to its authority to determine claimant's benefits, the board had authority to determine whether the minimum wage applied.

We need not decide whether the board was authorized to address minimum-wage issues in the context of its determination of claimant's entitlement to benefits for temporary disability. That is because we agree with Sedgwick that

there is no textual support, in either ORS chapter 656 or ORS chapter 653, for claimant's view that, in the absence of an agreement by an employer to pay wages, the statutory minimum wage applies to the determination of a worker's benefits. There is no indication in the text or context of the pertinent statutes or administrative rules that minimum-wage laws have any bearing on the calculation of a worker's benefits.

But we nonetheless conclude that the board erred in applying a temporary disability rate of $50 per week. As noted, the board reasoned that it could not determine a weekly wage for claimant because Wend, as a noncomplying employer, had not paid a premium and therefore did not have an assumed wage on which its premium was based. *See* OAR 436-060-0025(5)(i), (j) (for workers with no wages, or who are paid on commission with less than 52 weeks of earnings, benefits must be calculated on "the assumed wage" on which employer's premium is based.) The board's rationale is inconsistent with ORS 656.054(1), which provides that "[a] compensable injury to a subject worker while in the employ of a noncomplying employer is compensable to the same extent as if the employer had complied with this chapter." Claimant's benefits for temporary disability should not be less than they would have been had Wend complied with its obligation to provide workers' compensation insurance coverage. Had Wend complied with the workers' compensation law, claimant's benefits would have been calculated under OAR 436-060-0025(5)(i) or (j) using the "assumed wage" on which Wend's premium was based. Under OAR 436-080-0040, in determining the civil penalty to be assessed against a noncomplying employer, the Workers' Compensation Division is required to calculate the amount of "premium the employer would have paid during the noncomplying period if insurance had been provided." In the absence of insurance premiums actually paid by Wend at the time of the injury, we conclude that claimant's benefits should be calculated based on the assumed wage on which Wend's premium would have been based had Wend provided insurance. We therefore remand the board's order for reconsideration of temporary disability benefits.

Reversed and remanded.